# In the United States Court of Federal Claims

No. 15-1406C

Filed April 21, 2017

|  |  |
|---|---|
| WILLIAM T. HENDRICKSON & PATRICIA HENDRICKSON, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) |

Summary Judgment, RCFC 56; Breach of Contract; Annuity.

*Stephen G. Schwarz*, Counsel of Record, Faraci Lange, LLP, Rochester, NY, for plaintiffs.

*Mollie L. Finnan*, Trial Attorney, *Deborah A. Bynum,* Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiffs, William T. Hendrickson and Patricia Hendrickson, brought this breach of contract action alleging that the government breached a stipulation for compromise settlement agreement (the "Settlement Agreement") that plaintiffs entered into with the United States to resolve certain Federal Tort Claims Act claims. Plaintiffs and the government have filed cross-motions for summary judgment on the issue of liability, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). Pl. Mot.; Def. Mot. Plaintiffs have also moved for oral argument on the parties' cross-motions. Pl. Mot. to File Sur-Reply. For the reasons set forth below, the Court **DENIES** plaintiffs' motion for partial summary judgment on liability; **GRANTS** the government's cross-motion for summary judgment on liability; and **DENIES** as moot plaintiffs' motion for oral argument.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

In this breach of contract action, plaintiffs, William T. Hendrickson and Patricia Hendrickson, allege that the government has breached the Settlement Agreement that they entered into with the United States in 1985 to resolve a lawsuit brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (the "FTCA").  Compl. ¶ 1.  Specifically, plaintiffs allege that the government breached the Settlement Agreement by failing to pay the outstanding amounts due to plaintiffs with respect to certain monthly and periodic lump-sum payments that are required under that agreement, following the bankruptcy of the annuity company that had been making these payments.  *Id*. ¶¶ 32-33.  As relief, plaintiffs seek to recover $205,366.38, "plus a lump sum equal to present value of the shortfall between the monthly amounts due under the [Settlement] Agreement and the amounts [plaintiffs] are receiving from the entity making payments on behalf of ELNY," and other costs and fees.  *Id*. at Prayer for Relief.

#### 1. Plaintiffs' FTCA Litigation

The material facts of this case are not in dispute.  In 1982, plaintiffs brought a FTCA action in the United States District Court for the Western District of New York seeking to recover damages for personal injuries that William T. Hendrickson sustained in an accident involving a government vehicle.  *Id*. ¶¶ 3-4; Def. Mot. at 2.  Thereafter, the parties to that litigation reached a settlement to resolve plaintiffs' FTCA claims.  Def. App. at A7.

On March 22, 1985, Richard K. Willard, the Acting Assistant Attorney General of the Civil Division of the Department of Justice at the time, issued a letter to the United States Attorney for the Western District of New York stating that "[t]his is to advise you that on March 22, 1985, the above-captioned settlement proposal costing the government not more than

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiffs' complaint ("Compl."); plaintiffs' motion for partial summary judgment ("Pl. Mot.") and exhibits attached thereto ("Pl. Mot. at Ex. 1-13"); the government's cross-motion for summary judgment on liability ("Def. Mot.") and exhibits attached thereto ("Def. App. at A1-A182").

$900,000.00 was authorized." *Id*. at A5.  Thereafter, on April 2, 1985, the district court dismissed plaintiffs' case.  *Id*. at A16; Pl. Mot. at Ex. 7.

### 2. The Settlement Agreement

On April 29, 1985, plaintiffs and the government executed a Stipulation for Compromise Settlement pursuant to 28 U.S.C. § 2677 to fully resolve plaintiffs' FTCA claims.  Compl. ¶ 8; Compl. at Ex. A; Def. App. at A17-A24.  The Settlement Agreement requires that, among other things, the government would make a $151,782.66 lump-sum payment to plaintiffs, and that the government would pay $522,217.34 to Executive Life Insurance Company of New York ("ELNY") and $1,000.00 to First Executive Corporation ("First Executive") for the purpose of purchasing annuities to provide certain future, monthly and periodic lump-sum payments to plaintiffs.[2]  *See* Compl. at Ex. A, ¶¶ 4-6; Def. App. at A18-A21.

There are several provisions in the Settlement Agreement that are relevant to this dispute.  First, paragraph one of the Settlement Agreement states that "it is the purpose of this compromise settlement to bring this action involving [plaintiffs' FTCA claims] to a final and conclusive resolution."  Compl. at Ex. A, ¶ 1.  Paragraph two of that agreement further provides that "plaintiffs agree to accept the compromise settlement . . . in full settlement and satisfaction of any and all claims and demands . . . ."  *Id*. ¶ 2.

In addition, paragraph three of the Settlement Agreement provides, in relevant part, that:

> The United States of America shall be obligated to make payment of certain future periodic payments as set forth in paragraph "5" below.  The execution of this agreement and approval by the Court to provide such future periodic payments shall constitute a complete release and bar to any and all causes of actions, claims, liens, rights or subrogated interest under the Federal Torts Claims Act, or otherwise, known or unknown to the plaintiffs or their attorney, by reason of, or arising from, the events, circumstances or incidents giving rise to this lawsuit.

*Id*. ¶ 3.  Paragraph four of the Settlement Agreement provides that:

> The defendant United States of America, in full settlement and satisfaction of any and all claims which the named plaintiffs, William T. Hendrickson and Patricia Hendrickson, have or may hereafter acquire against the United States of America, or any of its agencies, agents, servants or employees arising out of the

---

[2] The Settlement Agreement also provides that the government would pay $225,000.00 to plaintiffs' attorney for attorney's fees.  Compl. at Ex. A, ¶ 6(b).

3

circumstances set forth in the Complaint filed in this matter, will pay a total sum not to exceed FIVE HUNDRED TWENTY-TWO THOUSAND TWO HUNDRED SEVENTEEN DOLLARS AND THIRTY FOUR CENTS ($522,217.34), by United States Treasury check to be made payable to Executive Life Insurance Company of New York and ONE THOUSAND DOLLARS ($1,000.00) payable to First Executive Corporation, . . . which sums are to be used and applied to the purchase of annuities which will provide future periodic payments as set forth in paragraph "5" below.

*Id*. ¶ 4.

In addition, paragraph five of the Settlement Agreement describes the future, periodic payments to be made under that agreement. *Id*. ¶ 5. Specifically, with respect to the monthly payments, paragraph five provides that "[t]he United States of America, will make payment of the following amounts by purchase of annuity from Executive Life Insurance Company of New York an 'A+' Best-rated life insurance company which will make payment of . . . $2,500.00 on the first day of the first month after the annuity is purchased, and continuing thereafter for the life of William T. Hendrickson." *Id*. ¶ 5(a). This paragraph further provides that the aforementioned monthly payments "shall be guaranteed for a period of forty (40) years (480 payments); thus, should William T. Hendrickson die before May 31, 2025, then the payments set forth herein shall be paid as they become due to his estate . . . ." *Id*.

With respect to periodic lump-sum payments, paragraph five also provides, in relevant part, that:

> The United States of America, will make payment of the following amounts by purchase of annuity from Executive Life Insurance Company of New York an 'A+' Best-rated life insurance company which will make payment of the following amounts: . . .
>
> To WILLIAM T. HENDRICKSON, the following lump sum payments: . . .
>
> June 1, 2015 - $200,000.00.

*Id*. ¶ 5(b). In addition, paragraph five of the Settlement Agreement provides that the United States "shall be the sole owner of the Annuity Contract and shall have all rights of ownership

4

including without limitation the right to change the beneficiary on the Annuity Contract." *Id*. ¶ 5.[3]

Paragraph seven of the Settlement Agreement further provides that:

The purchase of annuity contracts and lump sum payments as outlined above in paragraphs "5" and "6", and payments thereunder shall operate as full and complete discharge and satisfaction of the periodic or other payments with respect to the United States of America, pro tanto. The purchase cost (premium) of the annuity contracts and lump sum payments as outlined in paragraph "5" shall be in total combined sum not to exceed . . . $523,217.34[ ], and this compromise settlement is further contingent upon a purchase cost (premium) in that amount or less.

*Id*. ¶ 7. Lastly, paragraph eight of the Settlement Agreement provides that:

In exchange for the purchase of annuity contracts and lump sum payments as outlined in paragraphs "5" and "6" above, the plaintiff will file with the Clerk of the Court a dismissal of the claims and actions herein on the merits, with prejudice, and without costs, attorney's fees, expenses or interest.

*Id*. ¶ 8.

On April 29, 1985, the Department of Justice sent a letter to the United States General Accounting Office (the "GAO") directing the GAO to issue checks to make certain payments required under the Settlement Agreement for the following amounts: one check in the amount of $151,782.66 made payable to Mr. Hendrickson; one check in the amount of $1,000.00 made payable to First Executive Corporation; one check in the amount of $522,217.34 made payable to ELNY; and one check in the amount of $225,000.00 made payable to plaintiffs' attorney. Def. App. at A29. It is undisputed that the government made these payments. *Id*.; *see generally* Pl. Mot.; *see generally* Def. Mot.

On April 29, 1985, First Executive and the government executed an "Absolute Assignment," assigning the ELNY annuities to First Executive. Def. App. at A25. ELNY received a copy of the Absolute Assignment on September 4, 1985. *Id*.

---

[3] The Settlement Agreement also requires that the purchased annuities make certain lump-sum payments to provide for educational expenses for plaintiffs' children. *Id*. ¶ 5(c)-(d); Def. App. at A10-A12. Those payments are not in dispute in this litigation. *See generally* Pl. Mot.; *see generally* Def. Mot.

### 3. The ELNY Bankruptcy

After the parties executed the Settlement Agreement, the government used the settlement proceeds to purchase annuities from ELNY to make the future, periodic monthly and lump-sum payments required under the Settlement Agreement. Compl. ¶ 15. It is without dispute that, until July 2013, ELNY paid the monthly and periodic lump-sum payments required under the Stipulation Agreement. *Id.* ¶ 19; Answer ¶ 19; Def. Mot. at 6.

On April 16, 2012, the Supreme Court of New York declared ELNY insolvent, and the court approved a restructuring agreement for ELNY. Def. App. at A31-A37. Under this restructuring agreement, ELNY's assets were transferred to the Guaranty Association Benefit Company (the "GABC"), and the GABC assumed responsibility for making the monthly and periodic lump-sum payments due to plaintiffs. *Id.* at A38-A166; Def. Mot. at 6.

In a letter dated August 7, 2013, the GABC notified plaintiffs that their monthly annuity payments might be reduced. Compl. ¶¶ 20, 26-30; Def. App. at A167-A174. During the period September 2013 to June 2014, plaintiffs received $3,824.84 in monthly annuity payments from the GABC, rather than the $7,496.76 monthly payment that they would have received from ELNY. Compl. ¶ 26. In addition, during the period July 2014 to June 2015, plaintiffs received $3,977.84 in monthly payments from the GABC rather than the $7,796.63 monthly payment that they would have received from ELNY. *Id.* ¶ 27.

During the period July 2015 through December 2015, plaintiffs also received $4,136.95 in monthly payments from the GABC, rather than the $8,108.50 monthly payment that they would have received from the ELNY. *Id.* ¶ 28. In June 2015, plaintiffs received a lump-sum payment in the amount of $102,000.00, rather than the $200,000.00 lump-sum payment that they would have received from ELNY. *Id.* ¶ 29. In 2014, plaintiffs also received a payment in the amount of $241,500.00 from a Hardship Fund established by the life insurance industry to ease the impact of their reduced annuity payments. Def. App. at A175.

### B. Relevant Procedural Background

Plaintiffs initially filed this case in the United States District Court for the Western District of New York. *See Hendrickson v. United States*, No.6:82-CV-00621, 2014 WL 1224715 (W.D.N.Y. March 25, 2014). Following an appeal of that matter to the United States Court of

Appeals for the Second Circuit, the Second Circuit directed the district court to transfer the matter to this Court. *Hendrickson v. United States*, 791 F.3d 354, 363 (2d Cir. 2015).

Plaintiffs filed the transfer complaint in this matter on December 15, 2015. *See generally* Compl. On February 19, 2016, the government answered the complaint. *See generally* Answer.

On June 15, 2016, plaintiffs filed a motion for partial summary judgment on liability. *See generally* Pl. Mot. On November 4, 2016, the government filed a cross-motion for summary judgment on liability and a response and opposition to plaintiffs' motion for partial summary judgment on liability. *See generally* Def. Mot. On November 28, 2016, plaintiffs filed a response and opposition to the government's cross-motion for summary judgment on liability and a reply in support of their motion for partial summary judgment on liability. *See generally* Pl. Reply. On January 6, 2017, the government filed a reply in support of its cross-motion for summary judgment on liability. *See generally* Def. Reply.

On February 2, 2017, plaintiffs filed a motion for oral argument and a motion to file a sur-reply to the government's reply brief. *See* Pl. Mot. to File Sur-Reply. On the same date, the Court granted plaintiffs' motion to file a sur-reply. *See* Order, Feb. 2, 2017. On February 3, 2017, plaintiffs filed a sur-reply in further support of their motion for partial summary judgment on liability. *See generally* Pl. Sur-Reply.

On March 22, 2017, the government filed a notice of additional authority. *See* Def. Notice; *see also Langkamp v. United States*, No. 15-764C, 2017 WL 1046531 (Fed. Cl. March 20, 2017). On March 28, 2017, plaintiffs filed a substantive response to the government's notice of additional authority, and the Court granted plaintiffs leave to file this response on March 29, 2017. Pl. Resp.; Order, March 29, 2017. On April 11, 2017, the government filed a reply to plaintiffs' response to the government's notice of supplemental authority. *See generally* Def. Reply to Pl. Resp. to Supp. Auth. On April 3, 2017, the government filed a second notice of additional authority. Def. 2d Notice; *see also Shaw v. United States*, No. 14-783C, 2017 WL 1193703 (Fed. Cl. March 31, 2017).

These matters having been fully briefed, the Court addresses the pending motions.

### III.    STANDARDS OF REVIEW

#### A.  Jurisdiction And Contract Claims Against The United States

The Tucker Act grants this Court jurisdiction to consider claims based "upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Court does not, however, possess jurisdiction to consider claims against the United States "based on contracts implied in law." *United States v. Mitchell*, 463 U.S. 206, 218 (1983) (citing *Merritt v. United States*, 267 U.S. 338, 341 (1925)); *Aboo v. United States*, 86 Fed. Cl. 618, 626 *aff'd*, 347 F. App'x 581 (Fed. Cir. 2009) (citation omitted). And so, to bring a valid contract claim against the United States in this Court, plaintiff must establish either an express or implied-in-fact contract with the government. *Aboo*, 86 Fed. Cl. at 626. Such a contract claim must also be for "actual, presently due money damages . . . ." *King v. United States*, 395 U.S. 1, 3 (1969); *see also Speed v. United States*, 97 Fed. Cl. 58, 66 (2011) (citations omitted).

In addition, plaintiff bears the burden of proving the existence of a contract with the United States, and plaintiffs must show that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights." *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003). To establish the existence of either an express or implied-in-fact contract with the United States, a plaintiff must show: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012). A government official's authority to bind the United States must be express or implied. *Roy v. United States*, 38 Fed. Cl. 184, 187-89, *dismissed*, 124 F.3d 224 (Fed. Cir. 1997). And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents." *Id.* at 187.

In this regard, a government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009) *aff'd*, 385 F. App'x 987 (Fed. Cir. 2010) (internal citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990). On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his

assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2006) (citations omitted); *see also Aboo*, 86 Fed. Cl. at 627 (implied actual authority "is restricted to situations where 'such authority is considered to be an integral part of the duties assigned to a [g]overnment employee'" (quoting *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989))). In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority. *Janowsky v. United States*, 133 F.3d 888, 891–92 (Fed. Cir. 1998).[4]

### B. RCFC 56

Pursuant to RCFC 56, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is "material" if it could "affect the outcome of the suit under the governing law . . . ." *Id*. In addition, the moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). And so, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In making a summary judgment determination, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004); *Agosto v. INS*,

---

[4] Ratification may take place at the individual or institutional level. *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 653-54 (2006). Individual ratification occurs when a supervisor: (1) possesses the actual authority to contract; (2) fully knew the material facts surrounding the unauthorized action of his or her subordinate; and (3) knowingly confirmed, adopted, or acquiesced to the unauthorized action of the subordinate. *Id*. at 654 (quoting *Leonardo v. United States*, 63 Fed. Cl. 552, 560 (2005)). In contrast, institutional ratification occurs when the government "seeks and receives the benefits from an otherwise unauthorized contract." *Id*.; *see also Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).

436 U.S. 748, 756 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . ."). The Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### C. Contract Interpretation

The United States Court of Appeals for the Federal Circuit has held that "[c]ontract interpretation is a question of law." *Barron Bancshares, Inc., v. United States*, 366 F.3d 1360, 1368 (Fed. Cir. 2004); *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed. Cir. 1985); *Greenhill v. United States*, 92 Fed. Cl. 385, 393 (2010) ("The interpretation of a settlement agreement is a question of law."); *see also Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998) ("A settlement agreement is a contract, and we apply basic contract principles unless precluded by law."). When interpreting a contract, the Court first looks to whether the language of an agreement is ambiguous or unambiguous. *See Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996); *see also NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). It is also well-established that the Court's interpretation of a contract begins with its "plain language." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). And so, the plain and unambiguous provisions of a contract "must be given their plain and ordinary meaning . . . and the court may not resort to extrinsic evidence to interpret them." *Id.* (citations omitted); *see also Jowett, Inc. v. United States*, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (holding that the Court gives "the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning."); *Hills Materials Co. v. Rice*, 982 F.2d 514, 516 (Fed. Cir. 1992) ("Wherever possible, words of a contract should be given their ordinary and common meaning.") (citations omitted).

The Court also interprets the "provisions of a contract so as to make them consistent" and so as not "to render them ineffective or superfluous." *Abraham v. Rockwell Int'l. Corp.*, 326 F.3d 1242, 1251, 1254 (Fed. Cir. 2003) (citations omitted); *Fortec Constructors*, 760 F.2d at 1292 ("This court must be guided by the well accepted and basic principle that an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless."). But, in instances in which "there is a clear conflict between" contract clauses, the Court must "determine which of the conflicting terms controls." *Abraham*, 326 F.3d at 1253-54 (citations omitted). To do so, the Court must apply the "general rules of interpretation," which require that, "'[w]here specific and general terms in a contract are in conflict, *those which relate to a particular matter control over the more general language.*'" *Id*. at 1254 (citations omitted) (emphasis existing).

The Federal Circuit has also recognized that a contract that is reasonably susceptible to more than one interpretation is ambiguous. *Hills Materials Co.*, 982 F.2d at 516 (citations omitted). Where a latent ambiguity exists in a contract, "the court will construe the ambiguous term against the drafter of the contract when the nondrafter's interpretation is reasonable," under the general rule of *contra proferentem. Id*. (citations omitted); *see also NVT Techs, Inc.*, 370 F.3d at 1159 ("To show an ambiguity it is not enough that the parties differ in their respective interpretations . . . both interpretations must fall within the zone of reasonableness.") (citations omitted); *HPI/GSA-3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004) ("Before a court may enforce the general rule of *contra proferentem* against the drafter of an ambiguity, the contractor's interpretation of that ambiguity must be reasonable."). But, "an exception to the general rule that requires construing ambiguities against" the drafter exists where "the ambiguities are so patent and glaring that it is unreasonable for a [party] not to discover and inquire about them." *HPI/GSA-3C, LLC*, 364 F.3d at 1334 (quotations omitted). "Where an ambiguity is not sufficiently glaring to trigger the patent ambiguity exception, it is deemed latent and the general rule of *contra proferentem* applies." *Id*. (citations omitted).

Specifically relevant to the present case, the Federal Circuit has previously examined and interpreted settlement agreements with the United States that require future, periodic annuity payments in *Nutt v. United States* and *Massie v. United States*. In *Massie*, the appellants brought a breach of contract claim against the government alleging that the government guaranteed the annuity payments provided for under a settlement agreement that obligated the government to

11

purchase an annuity that "will result in distributions on behalf of the United States," after the annuity company went into conservatorship and failed to make the full payments. 166 F.3d 1184, 1186-87 (Fed. Cir. 1999). The Federal Circuit observed that "[t]he [contract] language specifying that the annuity 'will result in distributions' and that the disbursements 'shall be paid' is unambiguously mandatory and says unequivocally that the Massies must receive the payments." *Id*. at 1190. And so, the Federal Circuit held that the government guaranteed the subject annuity payments. *Id*.

More recently, in *Nutt*, the Federal Circuit interpreted a settlement agreement that required the government to purchase an annuity for the purpose of making certain periodic, future payments. 837 F.3d 1292, 1294 (Fed. Cir. 2016). In that case, the appellants argued that the government had guaranteed the full amount of their periodic annuity payments and that the government was liable for the shortfall in those payments after the annuity company reduced the amount of the payments. *Id.* The Federal Circuit held that the settlement agreement at issue−pursuant to which the government agreed to make certain lump sum payments and to purchase annuities to pay for the periodic payments–obligated the government to make the lump-sum payments and to purchase annuities, but not to ensure that future payments were made pursuant to annuity contracts. *Id*. at 1297. In reaching this conclusion, the Federal Circuit relied upon provisions in the settlement agreement that specifically obligated the government to select a "very sound" insurance company that was rated "excellent of better" to make annuity payments and to cooperate with the appellants in any lawsuit brought in the event that the annuity company defaulted on the payments. *Id*. at 1298.

In addition, the Federal Circuit held that the principle of sovereign immunity also compelled a finding that settlement of a FTCA lawsuit did not obligate the government to guarantee future payments under annuities that it agreed to purchase for the benefit of the *Nutt* appellants, because the settlement agreement did not unequivocally promise that the government would do so. *Id*. And so, the Federal Circuit concluded that "the Government's obligations were satisfied upon making the lump-sum payments and purchasing the annuity." *Id*.

IV.   **LEGAL ANALYSIS**

The parties have filed cross-motions for summary judgment with respect to liability on the issue of whether the government is obligated to pay the outstanding amounts of certain

monthly and periodic lump-sum payments called for under the Settlement Agreement. *See* Pl. Mot.; Def. Mot. In their motion for partial summary judgment, plaintiffs argue that the government breached the Settlement Agreement by failing to pay the shortfall in the amounts due under that agreement, after ELNY went into bankruptcy. *See*, *e.g.*, Pl. Mot. at 5-6. The government counters that it has not breached the Settlement Agreement, because the government did not unequivocally agree to make the future, monthly and periodic lump-sum payments required under the agreement and because the government fulfilled its obligations under the Settlement Agreement by, among other things, purchasing annuities for the purpose of making those future payments. Def. Mot. at 13-24.

For the reasons discussed below, the plain language of the Settlement Agreement demonstrates that the parties contracted for the government to purchase annuities for the purpose of making the future, monthly and periodic lump-sum payments to plaintiffs. In addition, the plain language of this agreement demonstrates that the government did not unequivocally guarantee these future payments. And so, the Court **DENIES** plaintiffs' motion for partial summary judgment on liability and **GRANTS** the government's cross-motion for summary judgment on liability.

### A. The Settlement Agreement Contemplates That The Government Purchase Annuities To Make The Future Payments To Plaintiffs

The parties agree that the Settlement Agreement at issue in this dispute is unambiguous. Def. Mot. at 13; Pl. Reply at 2; *Grumman Data Sys. Corp.*, 88 F.3d at 997 (demonstrating that the Court first looks to whether the language of an agreement is ambiguous or unambiguous); *NVT Techs., Inc.*, 370 F.3d at 1159. And so, the Court begins its interpretation of the Settlement Agreement with the plain language of that agreement. *McAbee Constr., Inc.*, 97 F.3d at 1435; *see also Jowett, Inc.*, 234 F.3d at 1368 (holding that the Court gives "the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning").

In this regard, the plain language of the Settlement Agreement makes clear that the agreement requires that the government purchase annuities for the purpose of making the future, monthly and periodic lump-sum payments called for under that agreement. Specifically, the Settlement Agreement provides in paragraph three that "[t]he United States of America shall be

obligated to make payment of certain future periodic payments set forth in paragraph '5' below." Compl. at Ex. A, ¶ 3. Paragraph four of the Settlement Agreement further clarifies this obligation and provides that the government:

> *will pay a total sum not to exceed* FIVE HUNDRED TWENTY-TWO THOUSAND TWO HUNDRED SEVENTEEN DOLLARS AND THIRTY FOUR CENTS ($522,217.34.), by United States Treasury check to be made payable to Executive Life Insurance Company of New York and ONE THOUSAND DOLLARS ($1000.00) payable to First Executive Corporation, Post Office Box 60, 390 North Broadway, Jerico [sic], New York 11573, *which sums are to be used and applied to the purchase of annuities which will provide future periodic payments as set forth in paragraph "5" below*.

*Id*. ¶ 4 (emphasis added). And so, these provisions expressly provide that $523,000.00 of the settlement proceeds to resolve plaintiffs' FTCA litigation will be used to purchase annuities to provide the future payments to plaintiffs. *Id*.

The requirement that the aforementioned purchased annuities will make these future payments to plaintiffs is restated in paragraph five of the Settlement Agreement, which provides, in relevant part, that:

> *The United States of America, will make payment of the following amounts by purchase of annuity* from Executive Life Insurance Company of New York an 'A+' Best-rated life insurance company which will make payment of the following amounts:
>
> > a. To WILLIAM T. HENDRICKSON, the sum of $2,500.00 on the first day of the first month after the annuity is purchased, and continuing thereafter for the life of William T. Hendrickson. The aforesaid payments shall increase annually at a rate of four percent (4%) compounded annually, and shall be guaranteed for a period of forty (40) years (480) payments; . . .
> >
> > b. To WILLIAM T. HENDRICKSON, the following lump sum payments:
> > June 1, 1986 - $10,000.00
> > June 1, 1987 - $10,000.00
> > June 1, 1988 - $10,000.00
> > June 1, 1989 - $10,000.00
> > June 1, 1990 - $10,000.00
> > June 1, 1995 - $50,000.00
> > June 1, 2000 - $75,000.00
> > June 1, 2005 - $100,000.00
> > June 1, 2010 - $150,000.00
> > June 1, 2015 - $200,000.00

14

*Id*. ¶ 5(b) (emphasis added). Paragraph five also provides that certain lump-sum payments for educational expenses for plaintiffs' children will be paid by the purchase of these annuities. *Id*. ¶ 5(c)-(d). And so, the plain and unambiguous language of the Settlement Agreement makes clear that the annuities purchased by the government are to make the future, monthly and periodic lump-sum payments set forth in the agreement.

### B. The Government Did Not Guarantee The Future Payments Set Forth In The Settlement Agreement

Because the plain language of the Settlement Agreement requires the government to purchase annuities for the purpose of making the future, monthly and periodic lump-sum payments to plaintiffs, and there is no dispute that the government did so, the Court next examines whether the government is required to make the future payments to plaintiffs should ELNY fail to do so.

On this question the parties disagree. Plaintiffs maintain in their motion for partial summary judgment that the Settlement Agreement requires that the government make the future, monthly and periodic lump-sum payments. Pl. Mot. at 4-10. The government argues, however, that the Settlement Agreement requires only that the government purchase annuities for that purpose and that the government has fully satisfied its obligation with respect to these payments by doing so. *See*, *e.g*., Def. Mot. at 8. For the reasons discussed below, the Court agrees that the government is not obligated to make up the shortfall in plaintiffs' monthly and periodic lump-sum payments under the terms of the Settlement Agreement.

First, the Settlement Agreement does not contain an express and unequivocal promise from the government to make the future payments to plaintiffs. To be liable to plaintiffs for the shortfall in such payments here, the government must have provided an unequivocal guarantee that it would make these payments in the event that ELNY failed to do so.[5] *Nutt*, 837 F.3d at

---

[5] In *Nutt*, the Federal Circuit rejected the appellant's argument that the language "payments by the United States shall operate as full and complete discharge of all payments to be made" meant that the government promised to guarantee the payments resulting from the annuities at issue in that case. 837 F.3d at 1297. The *Nutt* agreement also contained language that provided that if the insurance company defaults in making the annuity payments, "[the appellants] . . . shall have standing to sue the said insurance company for breach of contract." *Id*. at 1297. In contrast, here, the Settlement Agreement contains no provision regarding a default by the annuity company and simply provides that "plaintiffs

1298. A plain reading of the Settlement Agreement shows, however, that the government did not make such a promise here. *See* Compl. at Ex. A.

In this regard, plaintiffs point to paragraph 5(a) of the Settlement Agreement to show that the government promised to make the future, monthly and periodic lump-sum payments required under the Settlement Agreement. Pl. Resp. at 2-3. This provision provides that the future, monthly payments required under the Settlement Agreement "shall be guaranteed for a period of forty (40) years (480 payments); thus, should William T. Hendrickson die before May 31, 2025, then the payments set forth herein shall be paid as they become due to his estate . . . ." Compl. at Ex. A, ¶ 5(a). Although this provision does state that plaintiffs' future, monthly payments "shall be guaranteed for a period of forty (40) years," the above language does not provide an unequivocal guarantee that the *government* will make these payments. Rather, this provision makes clear that the annuity company will continue to make the future, monthly payments to plaintiffs for at least 40 years, in the event that Mr. Hendrickson dies before May 31, 2025. *Id*.

Plaintiffs' reliance upon paragraph 5(b) of the Settlement Agreement to show that the government guaranteed plaintiffs' future, periodic lump-sum payments is similarly misguided. Pl. Resp. at 2. This provision provides that:

> The aforesaid payments are guaranteed; thus should William T. Hendrickson die before June 1, 2015, then the payments set forth herein shall be paid as they become due to his estate through and including the payment due June 1, 2015.

Compl. at Ex. A, ¶ 5(b). But, again, paragraph 5(b) does not contain an unequivocal guarantee from the government that the government will make these future payments. Rather, like paragraph 5(a), this provision simply makes clear that ELNY will continue to make the future, periodic payments to plaintiffs in the event that Mr. Hendrickson dies before June 1, 2015. *Id*.

Plaintiffs' argument that the government is required to make the future, monthly and periodic lump-sum payments required under the Settlement Agreement, because that agreement contemplates a continuing liability upon the part of the government with respect to these

---

hereby agree to accept said sum in full settlement and satisfaction of any and all claims and demands . . . against [the government]." Def. App. at A9, ¶ 4.

payments is equally unavailing. To support this argument, plaintiffs rely upon paragraph seven of the Settlement Agreement which provides that:

> The purchase of annuity contracts and lump sum payments as outlined above in paragraphs "5" and "6", and payments thereunder shall operate as full and complete discharge and satisfaction of the periodic or other payments with respect to the United States of America, pro tanto.

Compl. at Ex. A, ¶ 7. And so, plaintiffs contend that the phrases "payments thereunder" and "pro tanto" in the aforementioned provision "unambiguously require [the future, monthly and lump-sum payments] to be made before 'complete discharge' [of the government's obligations] occurs." Pl. Reply at 2.

Plaintiffs' argument is belied by a plain reading of the Settlement Agreement for several reasons. First, when read within the context of the rest of the Settlement Agreement, paragraph seven does not create any continuing liability upon the part of the government. Rather, the text of the Settlement Agreement makes clear that the parties intended for this agreement to fully resolve plaintiffs' FTCA claims and to fully discharge the government's obligations with respect to the future, monthly and periodic lump-sum payments.

Specifically, paragraph one of the Settlement Agreement states that "it is the purpose of this compromise settlement to bring this action involving [plaintiffs' FTCA claims] to a final and conclusive resolution." Compl. at Ex. A, ¶ 1. Paragraph two of that agreement further provides that "plaintiffs agree to accept the compromise settlement . . . in full settlement and satisfaction of any and all claims and demands . . . ." *Id*. ¶ 2.

In addition, paragraph four of the Settlement Agreement similarly provides that "in full settlement and satisfaction of any and all claims . . ." the government "will pay [$522,217.34 to ELNY and $1,000.00 to First Executive], which sums are to be used and applied to the purchase of annuities which will provide future periodic payments . . . ." *Id*. ¶ 4. Paragraph eight of this agreement further provides that, after the government purchases the annuities and makes certain lump-sum payments to plaintiffs and their attorneys that were due and a payable in 1985, plaintiffs "will file with the Clerk of the Court a dismissal of the claims and actions herein on the merits . . . ." *Id*. ¶ 8.

Consistent with the above provisions–which express the parties' intent to fully resolve plaintiffs' FTCA claims and to fully discharge the government's obligations regarding the future, monthly and periodic lump-sum payments–paragraph seven of the Settlement Agreement provides that "[t]he purchase of annuity contracts and lump sum payments. . . , and payments thereunder shall operate as full and complete discharge and satisfaction of the periodic or other payments with respect to the United States of America, pro tanto." *Id.* ¶ 7. And so, the plain text of paragraphs one, two, four, seven and eight of the Settlement Agreement demonstrate that the parties intended for the government's purchase of annuities and payment of certain lump-sums to plaintiffs in 1985 to fully discharge the government's obligations under that agreement. *Id.* ¶¶ 3-5, 7-8.

Furthermore, and perhaps more importantly, paragraph seven of the Settlement Agreement simply does not expressly and unequivocally guarantee that the government would make up any shortfall in plaintiffs' future, monthly and periodic lump-sum payments. *Id.* ¶ 7. Rather, this provision addresses when a full and complete discharge of the government's obligations with respect to all of the payments required under that agreement would occur. Absent such an express and unequivocal guarantee to make up the shortfall in plaintiffs' payments, plaintiffs cannot show that the Settlement Agreement obligated the government to make up these payments.

Lastly, plaintiffs' reliance upon an unsigned assignment and assumption agreement, purportedly by and between the government and First Executive, to show that the government is obligated to make up any shortfall in the future, monthly and periodic lump-sum payments is equally misplaced. *See* Pl. Mot. at 6-7; Pl. Mot. at Ex. G. As plaintiffs acknowledge in their motion for partial summary judgment, the Settlement Agreement is unambiguous. Pl. Mot. at 5. And so, the Court may not look to such extrinsic evidence to determine the parties' obligations under the Settlement Agreement. *McAbee Constr., Inc.*, 97 F.3d at 1435.

In addition, as the government observes in its cross-motion, the unsigned assignment agreement upon which plaintiffs rely is not the final agreement executed by the government and First Executive. Def. Mot. at 24-26; Def. App. at A25. And so, plaintiffs also cannot properly or reasonably rely upon this agreement to show that the government is obligated to make the future, monthly and periodic lump-sum payments at issue in this litigation.

### C. The Government Could Not Have Entered Into The Contract That Plaintiffs Allege

As a final matter, it is also important to note that the undisputed material facts in this case show that the government could not have entered into the contract that plaintiffs allege exists in this litigation. It is well-established that to demonstrate the existence of either an express or implied-in-fact contract with the government, plaintiffs must show, among other things, the actual authority of the government official whose conduct is relied upon to bind the government in contract. *Kam-Almaz*, 682 F.3d at 1368; *see also* 31 U.S.C. § 1341(a)(1)(A) ("An officer or employee of the United States Government . . . may not make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation. . . ."). The undisputed material facts in this case show that the Assistant United States Attorney who entered into the Settlement Agreement on behalf of the government had actual authority to settle plaintiffs' FTCA claims for $900,000.00. Def. App. at A5. It is also undisputed that the government paid this authorized amount in 1985 to resolve plaintiffs' FTCA litigation. *Id*. at A26, A29-A30.

The contract that plaintiffs allege exists in this litigation would require the government to expend funds well in excess of the $900,000.00 that has been authorized and previously disbursed to resolve plaintiffs' FTCA litigation. As the government argues in its briefs, such a reading of the Settlement Agreement would render that agreement void and unenforceable. Def. Mot. at 21-24; *see also* Def. Reply at 10-14; *see Fed. Crop Ins. Corp v. Merrill*, 332 U.S. 380, 384 (1947); *cf. Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) ("[A]ny private party entering into a contract with the government assumes the risk of having accurately ascertained that he who purports to act for the government does in fact act within the bounds of his authority.") (citations omitted).[6]

Indeed, at bottom, the plain language of the Settlement Agreement at issue in this litigation makes clear that the government satisfied its obligations regarding the future payments required under that agreement when the government purchased annuities to provide for these

---

[6] Because the Court finds the Settlement Agreement to be unambiguous, the Court does not address the parties' arguments regarding alleged latent ambiguities in that agreement or the applicability of the rule of *contra proferentem*. *See* Pl. Mot. at 2; Def. Mot. at n.3.

payments. Plaintiffs do not point to−and the Court does not find−any language in the Settlement Agreement that could reasonably be read to provide an express and unequivocal guarantee that the government would make the future, monthly and periodic lump-sum payments to plaintiffs should ELNY fail to do so. And so, plaintiffs have not established that the government is obligated to make such payments, or that the government is liable to plaintiffs in this action.

## V.   CONCLUSION

In sum, the plain language of the Settlement Agreement demonstrates that the government contracted to purchase annuities to make the future, monthly and periodic lump-sum payments required under paragraph five of that agreement. The plain language of this agreement also demonstrates that the government did not unequivocally guarantee that it would make these future payments in the event that ELNY failed to do so. Given this, the undisputed material facts in this matter show that the government is not liable to plaintiffs for the shortfall in the subject payments.

And so, for the foregoing reasons, the Court:

1. **DENIES** plaintiffs' motion for partial summary judgment on liability;

2. **GRANTS** the government's cross-motion for summary judgment on liability; and

3. **DENIES** as moot plaintiffs' motion for oral argument.

It is further **ORDERED** that the parties shall **FILE** a joint status report on or before **May 12, 2017**, stating their respective views on whether this matter should be dismissed in light of the Court's ruling on the parties' cross-motions for summary judgment on liability.

The Clerk's Office shall enter judgment accordingly.

No costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby  
LYDIA KAY GRIGGSBY  
Judge
